The Honorable Steve Higginbothom State Senator Post Office Box 242 Marianna, AR 72360
Dear Senator Higginbothom:
You have presented the following question for my opinion:
 Do the provisions of Amendment 65, § 4 (generally limiting the interest rate on revenue bonds issued thereunder to "the maximum authorized by Amendment 60") actually place any limit upon the interest rate on multifamily mortgage revenue bonds issued thereunder if the federal usury override for first mortgage loans on residential real property set forth in 12 U.S.C. § 1735f-7a is met with respect to the bonds, particularly in light of the language of Amendment 60 stating that its provisions" are not intended and shall not be deemed to supersede or otherwise invalidate any provisions of federal law applicable to loans or interest rates including loans secured by residential real property"?
You describe the "multifamily mortgage revenue bonds" as follows:
 Generally, the bond issuer loans the proceeds of the sale of the bonds to a developer/owner, which uses the proceeds to construct (or acquire and rehabilitate) a multifamily residential real property development (i.e., an apartment complex). The issuer's loan to the developer/owner is evidenced by a promissory note and secured by a first mortgage on the development. Because the bond issuer is a "conduit" issuer (i.e.,
its promise to pay principal and interest on the bonds is limited to amounts realized from repayments of the note and/or execution on the mortgage), the note and mortgage are made in favor of, or assigned to, the bond trustee.
Response
Summary of Opinion: It is my opinion that the question of whether the interest rate limitation on the transaction between the bond issuer and the bondholder is preempted by federal law will depend upon the provisions of the documents that govern the bond transaction and upon certain other facts about the bond transaction and about the nature of the bondholders. These are questions of fact that must be evaluated on a case-by-case basis. I am not authorized to make findings of fact of this nature. If, as a factual matter, the documents governing the bond transaction provide that the obligation of the bond issuer is to be secured by a first lien on residential real property, and if, as a factual matter, the bond transaction and bondholders fall within the descriptions set forth in 12 U.S.C. § 1735f-7a, the state usury limits under Amendments 60 and 65 to the Arkansas Constitution will be preempted by federal law and will not apply. However, if these conditions have not been met, or if the terms of the bond issue are established before the identity of the bondholders is known, preemption under12 U.S.C. § 1735f-7a cannot occur.
Discussion
Because you have specifically asked about preemption of the usury limitation imposed upon revenue bonds under Amendment 65 to the Arkansas Constitution, the transaction that I must evaluate in answering your question is the transaction between the bond issuer and the bondholder, rather than the transaction between the bond issuer and the developer. Regardless of whether the interest rate on the loan from the bond issuer to the developer would be preempted by 12 U.S.C. § 1735f-7a, that transaction is separate and distinct from the bond transaction, and even if it is directly related to the bond transaction (e.g., through assignment of the mortgage lien), it cannot be used to "bootstrap" the bond transaction into the purview of 12 U.S.C. § 1735f-7a.
Nevertheless, it is conceivable that a bond transaction could, in and of itself, fall within the preemption provisions of12 U.S.C. § 1735f-7a.
The provisions of 12 U.S.C. § 1735f-7a are a part of the Depository Institutions Deregulation and Monetary Control Act of 1980 (Pub.L. No.96-221, 94 Stat. 132, 161). That federal law expressly preempts state usury limits on certain transactions that take place after March 31, 1980 and that are secured by first mortgage liens on residential real estate. More specifically, 12 U.S.C. § 1735f-7a states in pertinent part:
 (1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is —
 (A) secured by a first lien on residential real property, by a first lien on all stock allocated to a dwelling unit in a residential cooperative housing corporation, or by a first lien on a residential manufactured home;
(B) made after March 31, 1980; and
 (C) described in section 527(b) of the National Housing Act (12 U.S.C. 1735f-5(b)), [with certain exceptions][.]
12 U.S.C. § 1735f-7a(a)(1) (in part).
In order for a transaction to fall within the referenced description in the National Housing Act it must be secured by residential real estate, and it must meet one of the following four requirements:
 (A) [it must be] made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is itself regulated by any agency of the Federal Government; or
 (B) [it must be] made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by the Secretary of Housing and Urban Development or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary of Housing and Urban Development or a housing or related program administered by any other such officer or agency; or
 (C) [it must be] eligible for purchase by the Federal National Mortgage Association, the Government National Mortgage Association, or the Federal Home Loan Mortgage Corporation, or from any financial institution from which it could be purchased by the Federal Home Loan Mortgage Corporation; or
 (D) [it must be] made in whole or in part by any "creditor", as defined in section 1602(f) of Title 15,[1] who makes or invests in residential real estate loans aggregating more than $1,000,000 per year.
12 U.S.C. § 1735f-5(b).
Thus, in order for the interest rate limitation on a bond transaction under Amendment 65 to be preempted by 12 U.S.C. § 1735f-7a, the following conditions must be met:
 (1) The bond issuer's obligation to pay must be secured by a first lien on residential real estate;
(2) The transaction must be entered into after March 31, 1980; and
 (3) The transaction must be described by (A), (B), (C), or (D) of 12 U.S.C. § 1735f-5(b), quoted above.
The question of whether these conditions have been met is a question of fact that must be determined on a case-by-case basis. I note that a determination of whether the first condition has been met can readily be made by reviewing the documents governing the bond transaction. It is my opinion that if the bond agreement does not expressly provide that the bond issuer's obligation is secured by a first lien on residential real estate, the first condition has not been met, even if the bond issuer later assigns his lien on the developed residential property to the bondholder. A determination of whether the other conditions have been met will require a factual inquiry into the specific nature of the bondholder and the bond transaction. Only if all conditions are found to have been met as a factual matter can the interest rate limitation on the bond transaction be deemed to be preempted by 12 U.S.C. § 1735f-7a.
I must note that because the applicability of the descriptions set forth in sections (A), (B), (C), and (D) of 12 U.S.C. § 1735f-5(b) depends largely upon the nature of the bondholder, the question of preemption will be precluded entirely in the context of a bond transaction in which the terms of the transaction are established before the identity of the bondholders is known. That is, the question of preemption cannot even be considered if the bonds are offered to unknown buyers, because the interest rate on the bonds will most likely be established before a determination can be made as to whether the transaction with such bondholders will fall within the descriptions set forth in12 U.S.C. § 1735f-5(b). However, if the bond issue is one in which the bondholders have been selected prior to the issue, the question of preemption can be considered. If in the context of such a bond issue, the bondholders and the bond transaction do fall within the descriptions set forth in 12 U.S.C. § 1735f-5(b), and if the other requirements of 12 U.S.C. § 1735f-7a are met, preemption can occur. Again, the question is one of fact that will depend upon the nature and timing of the bond issue and upon the nature of the bondholders. I reiterate that I am neither authorized nor equipped to undertake factual determinations.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] The referenced definition of "creditor" states: "(f) The term `creditor' refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(f).